UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CLARK FRATUS, et al.,

        Plaintiffs,

    v.

COUNTY OF CONTRA COSTA, et al.,

        Defendants.

Case No. 14-cv-05533-MEJ

**ORDER RE: MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 48

## INTRODUCTION

Clark Fratus and Karla Fratus ("Plaintiffs") bring this action for claims arising out of a code enforcement action on their properties at 2284 and 2300 Dutch Slough Road in the Oakley area of unincorporated Contra Costa County (the "Properties"). Defendants[1] now move for summary judgment or, in the alternative, partial summary judgment, on Plaintiffs' claims. Mot., Dkt. No. 48. Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion as set forth below. Additionally, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, to the extent any of these claims are not barred by res judicata. The Court accordingly **DISMISSES** the case in its entirety.

## BACKGROUND

Plaintiffs filed this case in state court on February 14, 2014, and Defendants removed the action to this Court on December 18, 2014. Notice of Rem., Dkt. No. 1. This is not the first time Plaintiffs have filed suit regarding the code enforcement action on their Properties. On July 26,

---

[1] "Defendants" are the County of Contra Costa ("County"), Catherine Kutsuris (former Director of the County's Department of Conservation and Development ("DCD")), Jason Crapo (Deputy Director for the Building Inspection Division of DCD), Michael Angelo Silva (former Chief of the Property Conservation section of the Building Inspection Department), Gano Thomas (former Principal Building Inspector and Office Coordinator for East County Satellite Office), Robert Erickson (County building inspector), Aruna Bhat (Deputy Director of Community Development Division in DCD), and Keith Denison (DCD's Application and Permit Center Manager ).

2011, Plaintiffs filed their first federal action concerning the code enforcement case, naming the same defendants they name in this case (except for Defendant Denison, who was named for the first time in this case).  That case is *Clark Fratus, et al., v. Contra Costa Board of Supervisors, et al.*, Case No. 11-cv-3659-JSC (N.D. Cal.) ("*Fratus I*").[2]  Magistrate Judge Jacqueline Corley's Order on the defendants' motion for summary judgment in *Fratus I* describes much of the background for this action[3]; accordingly, the Court adopts it here as well:

> Plaintiffs' subject properties both contain homes, which consist of living quarters on both the main and lower floors. On or about October 4, 2007, Robert Erickson, one of Defendants' building inspectors, received a complaint regarding both properties by a tenant at the 2284 Dutch Slough Road property ("the 2284 property"). The tenant complained that the properties had second living units in the floodplain. Erickson inspected the lower unit at the 2284 property and reviewed Contra Costa County Department of Conservation and Development ("DCD") records for building and land use permits on the properties. Erickson found no building or land use permit that authorized a living area or second unit on the lower level of either property. Based on Erickson's examination, he issued a Notice to Comply letter for the 2284 property on October 26, 2007.

> [Footnote 2: Erickson did not have access to the 2300 Dutch Slough Road property ("the 2300 property") and was thus unable to verify the existence of a lower living unit. However, Mrs. Fratus later told DCD that the 2300 property included a second living area on the bottom floor. A Notice to Comply for the 2300 property was not issued until December 12, 2008.]

> On October 30, 2007 Plaintiffs met with Erickson and another DCD representative to discuss the subject properties. Plaintiffs presented permits, asserting that both properties were permitted for two stories. However, based on the valuation of the floor space, DCD informed Plaintiffs that only the upper floors were permitted for living space. Specifically, the 1962 permit for the 2300 property values the main floor area at $9.00 a square foot while the accessory floor was valued at $4.00 a square foot. Based on Erickson's experience, he concluded that the lower valuation signified that the

---

[2] *Fratus I* also included Planning Technician Debra Lauglin as a defendant.

[3] The Court takes judicial notice of the Orders and filings in *Fratus I* discussed in this Order.  *See* Fed. R. Evid. 201; *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (judicial notice properly taken of court filings and other matters of public record). Defendants filed a request for judicial notice of many of the filings in *Fratus I*, but filed these documents in several different docket numbers.  *See* Dkt. Nos. 33-35, 47, 50.  For ease of use, the Court refers to the documents from *Fratus I* as they appear in that case's docket, rather than Defendants' request for judicial notice in this action.

lower area was not permitted for living space. The valuation of the detached garage in the 1964 permit—$4.00 a square foot—confirmed for Erickson that the lower area in the home was not permitted for living space. Similarly, the 1964 permit for the 2284 property showed a valuation for the main floor area at $10.00 a square foot and the other two floor/additional areas as $4.00 and $1.00 a square foot.

Plaintiffs disagreed with DCD's evaluation. Erickson recommended that Plaintiffs try to obtain additional documents regarding the homes, including from the Assessor's Office. Plaintiffs scheduled a meeting with the Chief of Property Conservation, Michael Angelo Silva, which did not occur until August 28, 2008. That meeting included Plaintiffs, Mr. Silva, Mr. Erickson, Planner Aruna Bhat, and two employees of the District V Supervisor's Office, David Fraiser, the Chief of Staff, and Lynn Reichard, the Administrative Assistant. The files and documents provided by Plaintiffs were reviewed and the parties' positions were discussed.

Plaintiffs contended that the properties should have "legal non-conforming" status and therefore not be subject to the zoning and building violations notwithstanding the absence of a permit authorizing the construction of a second unit. "[A] legal nonconforming use is one that existed lawfully before a zoning restriction became effective and that is not in conformity with the ordinance when it continues thereafter." *Ideal Boat & Camper Storage v. County of Alameda*, 208 Cal. App. 4th 301, 313 (2012) (internal quotation marks omitted.). Defendants' position was, and remains, that such status can be established only if the owner proves the structure was built before the adoption of the zoning ordinance and was in continuous use. Defendants contend that a 1951 ordinance allowed only a single family home, and this remained unchanged until 1967. Moreover, while the 1967 ordinance did allow for more than one "separate dwelling unit" if the property owner obtained a permit, that separate unit could be attached only if it was "for servants or members of the family within the third degree of consanguinity." (Dkt. No. 68, Defendants' Request for Judicial Notice, Ex. 2, Ordinance No. 67-38(b)(10).) Defendants assert that no subsequent ordinance allows attached second units in the zoning district in which Plaintiffs' properties are located. Accordingly, Defendants contend that legal non-conforming status is possible only if the attached second units were built before 1951 and have been in continuous use ever since.

Plaintiffs' theory was, and remains, that their properties are legal non-conforming so long as they were built prior to the enactment of the 1967 ordinance; Plaintiffs reject Defendants' interpretation of the 1951 ordinance and instead contend that the 1951 ordinance allows attached second units even without a permit. Plaintiffs submitted three declarations and Assessor's Office records from 1964 to DCD that they contend show that the second units on the 2300 and 2284 properties were in existence as of 1964 and therefore legal non-conforming. Defendants disagreed with Plaintiffs' alternative interpretation of the ordinance. As a result, Defendants maintained that the properties are illegal because neither the declarations nor the Assessor's Office records establish that the

1    properties were used as second units prior to 1951 or that the
     properties were used continuously as second units since that time.

2    Over the next several months, Defendants and Plaintiffs exchanged
3    communications, and notices continued to be issued regarding the
     alleged code enforcement violations. On May 6, 2009, notices of
4    fines were issued. One notice fined plaintiffs $4,300 for the building
     violations at the 2284 property. Another notice fined plaintiffs
5    $4,300 for the zoning violation at the 2284 property. The third
     notice fined plaintiffs $4,300 for the building violations at the 2300
6    property. Plaintiffs appealed the three notices of fines.

7    On November 16, 2009, the appeal hearing on the three notices was
     held. Jason Crapo was the Building Official to hear the building
8    code violations, and Robert Drake was the Deputy Zoning
     Administrator to hear the zoning code violations. Contra Costa
9    County staff presented reports to the hearing examiners. Plaintiffs'
     then-attorneys also presented evidence to the hearing examiners.

10   On December 8, 2009, a final administrative order was issued
     upholding the $12,900 in fines. Following the decision, Plaintiffs
11   filed a petition for an administrative mandate in Contra Costa
     County Superior Court. On June 2, 2011, the state court granted
12   Plaintiffs' motion for administrative mandate, finding that the
     weight of the evidence established that both properties had been
13   permitted during the 1960s for two stories of living space. Although
     Plaintiffs chose not to act on the state court's mandate, Defendants
14   nonetheless rescinded the fines and released the Assessment Liens
     for Plaintiffs' failure to pay their fines. However, Mrs. Fratus
15   contends that the Assessment Liens affected their 2010 property
     taxes, resulting in penalties that remain unpaid and continue to
16   accumulate.

17   *Fratus I* Order re: Mot. for Summ. J., Dkt. No. 119 (filed Dec. 21, 2012).

18       Judge Corley granted defendants' motion for summary judgment on December 21, 2012

19   and entered judgment in their favor. *Id.*; *Fratus I* Judgment, Dkt. No. 120.  Judge Corley

20   concluded Plaintiffs' procedural due process claim—which alleged defendant Crapo was biased in

21   favor of DCD—failed as a matter of law because there was no genuine dispute DCD revenues

22   from fines for the applicable time periods were *de minimis*.  Judge Corley granted summary

23   judgment to the defendants on Plaintiffs' substantive due process claim because Plaintiffs had

24   failed to raise an issue of fact as to whether Defendants' conduct in enforcing the applicable land

25   use and building codes was arbitrary or egregious.  *Fratus I* Order re: Mot. for Summ. J. at 11-12.

26   Judge Corley subsequently also denied Plaintiffs' Motion for Relief from the Summary Judgment

27   Order.  *Fratus I* Order Denying Relief from Final Judgment, Dkt. No. 144.  In doing so, Judge

28   Corley rejected Plaintiffs' arguments that the state court's order could have had a res judicata

4

effect over their substantive due process claim.  *Id.* at 5-7 ("Such an argument . . . fail[s] as the issue of whether Defendants properly applied County ordinances is not determinative of whether Defendants violated substantive due process.").

Plaintiffs appealed the Summary Judgment Order, and the Ninth Circuit affirmed.  The Ninth Circuit found, among other things, that "[t]he County's conclusion that a 1951 county ordinance prohibited attached second living units in Plaintiffs' homes was not 'egregious.'" *Fratus v. Contra Costa Cty. Bd. of Supervisors*, 599 F. App'x 707, 708-09 (9th Cir. 2015) (quoting *Brittain v. Hansen*, 451 F.3d 982, 996 (9th Cir. 2006)).  It agreed "DCD employees did not act in ways that 'shock[] the conscience' and they did not 'intend[] to injure in some way unjustifiable by any government interest.'" *Id.* (quoting *Brittain*, 451 F.3d at 991) (edits in original).

Plaintiffs now argue "[t]he only claims that were adjudicated in [*Fratus I*] were constitutional claims under 42 U.S.C. § 1983 for actions that occurred prior [to] July 2011" relating to procedural due process and substantive due process.  Am. Opp'n at 17, Dkt. No. 75.[4] They also contend that "[a]lthough there were dismissed pendant state law claims[,] they were not adjudicated, and they were not dismissed 'with prejudice.'" *Id.*[5]  Plaintiffs indicate this case is different from *Fratus I* because (1) they seek declaratory and injunctive relief based on Defendants' alleged continued attempts to re-institute and take further action against Plaintiffs' Properties and Defendants' refusal to issue permits for second units for Plaintiffs' Properties; (2) their inverse condemnation claim is based on actions that occurred after June 2012 and thus those claims "did not exist at the time of the prior litigation"; and (3) Plaintiffs' fourth, fifth, and sixth causes of action asserting federal claims for denial of equal protection, First Amendment

---

[4] Plaintiffs originally filed their Opposition on April 14, 2016 (Dkt. No. 62); however, on May 22, 2016, they filed an "Amended Opposition" (Dkt. No. 75) following Defendants' initial Reply (Dkt. No. 67).  Consequently, the Court allowed Defendants the opportunity to file an Amended Reply and admonished Plaintiffs that their amended filing violated the Federal and Local Rules and any future filings not in compliance with these Rules would be stricken.  *See* Compliance Order, Dkt. No. 76.

[5] Plaintiffs dismissed their injunctive relief claim and their inverse condemnation claim in *Fratus I.*  They referred to these claims as "state law" claims.  *See Fratus I* Order Granting Stipulated Dismissal, Dkt. No. 51; *see also Fratus I* Compl., Dkt. No. 1.

1    retaliation, and denial of substantive due process, respectively, are based on violations that post-

2    dated the original lawsuit.  *Id.* at 18-19 (emphasis omitted).[6]

3          Defendants' Summary judgment Motion contends otherwise.  They argue all of Plaintiffs'

4    claims are barred based on res judicata as a result of Judge Corley's rulings in *Fratus I*.  *See* Mot.

5    They also challenge each of Plaintiffs' federal claims on statute of limitation grounds and for lack

6    of evidence supporting those claims.  *See id.*

7          At the initial hearing on Defendants' Motion, Plaintiffs agreed their claims for declaratory

8    and injunctive relief, as well as their inverse condemnation claim, are made pursuant to state law.

9    *See* Compl., Causes of Action 1-3 ("state law claims").  Plaintiffs' federal claims are for denial of

10   equal protection, First Amendment retaliation, and denial of substantive due process.  *See id.*,

11   Causes of Action 4-6 ("federal claims").  The Court subsequently allowed Plaintiffs further

12   briefing and some limited supplementation of evidence, and allowed Defendants the opportunity

13   to respond.  At both the hearing and in a follow-up Order, the Court stated:

> By August 15, 2016, Plaintiffs shall file a supplemental response of
> no more than 15-pages, double-spaced, which identifies what
> specific facts in the record support their Equal Protection,
> Substantive Due Process, and First Amendment retaliation claims.
> In doing so, Plaintiffs should focus on acts that occurred in or after
> February 2012. Please be specific and go through each of the
> constitutional claims – for instance, which of the Defendants
> allegedly violated Plaintiffs' Equal Protection rights in or after
> February 2012 and how, and what evidence in the record supports
> this. Plaintiffs may file no more than 15 pages worth of additional
> evidence in support of their response, although they are encouraged
> to cite *current* portions of the record, and to do so with specificity
> (i.e., docket number, page number, etc.).
>
> By August 29, 2016, Defendants may file a supplemental response
> of no more than 15 pages, double-spaced.

23   Order for Suppl. Briefing, Dkt. No. 83 (emphasis in original).

---

[6] Plaintiffs' Opposition also scatters various references to alleged procedural inadequacies in
Defendants' enforcement actions.  *See, e.g.*, Am. Opp'n at 4 ("Without a showing of some exigent
circumstance, due process mandated a predeprivation notice and hearing.").  It is unclear why
Plaintiffs raise such arguments, but as they did not assert a procedural due process claim in this
action (unlike in *Fratus I*), the Court shall not address Plaintiffs' procedural assertions.  In any
event, as discussed below, such claims would be barred by res judicata.

United States District Court
Northern District of California

1       On August 15, 2016, Plaintiffs filed (1) a six page supplemental brief (Dkt. No. 84); (2)

2   Ms. Fratus' Declaration (5 pages) with exhibits (22 pages) (Dkt. No. 85); and (3) Mr. Fratus'

3   Declaration (4 pages) with exhibits (22 pages) (Dkt. No. 86).  On August 29, 2016, Defendants

4   filed a 15-page response (Dkt. No. 89) and objections (Dkt. No. 90), which the Court addresses as

5   necessary.  Plaintiffs' supplemental brief asserts that "[t]his lawsuit, filed in February 2014, seeks

6   recovery for events that occurred after the filing of [*Fratus I*] in 2011."  Pls.' Suppl. Br. at 1.  They

7   then outline a handful of actions they contend occurred in 2012 and after, which they allege

8   violate their civil rights.[7]  The Court discusses this new evidence and whether it may be

9   considered at summary judgment in the "Evidentiary Issues" section below.

10                                   **LEGAL STANDARD**

11      A party may move for summary judgment on a claim or "part of" a claim pursuant to

12   Federal Rule of Civil Procedure 56(a).  Summary judgment is proper where the pleadings,

13   discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and

14   [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party

15   moving for summary judgment bears the initial burden of identifying those portions of the

16   pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material

17   fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Material facts are those that may affect

18   the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as

19   to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict

20   for the nonmoving party.  *Id.*

21      Where the moving party will have the burden of proof on an issue at trial, it must

22

23   _____

    [7] Plaintiffs' response did not comply with the Court's Supplemental Briefing Order, exceeding the
24   allotted page limit and not clearly addressing each of their federal claims as instructed.  They also
    filed three declarations (*see* Decls., Dkt. Nos. 91-93), well after the response deadline.  The Court
25   has previously warned Plaintiffs of the importance of complying with its rules, and Plaintiffs again
    failed to respect those rules.  *See* Compliance Order (warning Plaintiffs the Court would strike
26   future filings that do not comply with the Court's rules).  The Court hereby **STRIKES** the three
    declarations (Dkt. Nos. 91-93).  As to the additional evidence submitted in Plaintiffs'
27   Supplemental Responses (Dkt. Nos. 84-86), in an abundance of caution, the Court has reviewed
    all the evidence presented; however, as discussed below, none of this evidence changes the
28   Court's analysis of Defendants' Motion.

United States District Court
Northern District of California

affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where

the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by

pointing out to the district court that there is an absence of evidence to support the nonmoving

party's case. *Celotex*, 477 U.S. at 324-25.

If the moving party meets its initial burden, the opposing party must then set forth specific

facts showing that there is some genuine issue for trial in order to defeat the motion. Fed. R. Civ.

P. 56(e); *Anderson*, 477 U.S. at 250. All reasonable inferences must be drawn in the light most

favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir.

2004). However, it is not the task of the Court to scour the record in search of a genuine issue of

triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court "rel[ies] on the

nonmoving party to identify with reasonable particularity the evidence that precludes summary

judgment." *Id.*; *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine

issue of fact, where the evidence is not set forth in the opposing papers with adequate references

so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031

(9th Cir. 2001). If the nonmoving party fails to make this showing, "the moving party is entitled

to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

### EVIDENTIARY ISSUES

The Court now discusses the new arguments and some new evidence Plaintiffs filed in

support of their present claims. At the summary judgment stage, parties must set out facts they

will be able to prove at trial. At this stage, courts "do not focus on the admissibility of the

evidence's form . . . . [but] instead focus on the admissibility of its contents." *Fraser v. Goodale*,

342 F.3d 1032, 1036 (9th Cir. 2003) (citation omitted). Accordingly, "[t]o survive summary

judgment, a party does not necessarily have to produce evidence in a form that would be

admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil

Procedure 56." *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001). "A party asserting

that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular

8

1    parts of materials in the record, including depositions, documents, electronically stored

2    information, affidavits or declarations, stipulations (including those made for purposes of the

3    motion only), admissions, interrogatory answers, or other materials; or (B) showing that the

4    materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

5    party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

6        First, Plaintiffs present evidence that on November 27, 2012, the County recorded two

7    Notices of Final Disposition and Release of Notice of Pending Nuisance Abatement Proceeding

8    for the properties, which Plaintiffs assert the County did not mail to them until January 2013.  Pls.'

9    Suppl. Br. at 1-2; Suppl. K. Fratus Decl., Exs. A-B at 1[8] ("Notices"), Dkt. Nos. 85-(1-2); *id.*, Ex. 3

10   (copy of part of envelope allegedly containing notices).  They note the timing of the issuance was

11   before Judge Corley issued her Summary Judgment Order on December 21, 2012, but there is no

12   indication these Notices were presented to Judge Corley.  Pls.' Suppl. Br. at 2.  Plaintiffs also note

13   "[t]he Notices were issued without the Fratus' having made any renovations, modifications or

14   improvements of any kind to their Dutch Slough Road properties," and therefore argue the Notices

15   "constitute an admission by the County that there was never a problem with their existing second

16   unit use of those properties."  *Id.*

17       The Court does not find evidence of the Notices or the delay in sending them to be material

18   to any issue in this litigation.  As Defendants argue, Plaintiffs "have offered no comprehensible

19   explanation" for how the Notices and the delay support any of their claims.  These Notices show

20   termination of the code enforcement actions to Plaintiffs' benefit—not a deprivation of rights.

21   *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) ("Substantive due process protects

22   individuals from *arbitrary deprivation* of their liberty by government." (emphasis added) (citing

23   *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-49 (1998))).  Nor do the Notices or the delay show

24   any retaliation or unequal treatment to support Plaintiffs' equal protection or retaliation claims.

25   Furthermore, there is no indication the Notices would have altered Judge Corley's decision.

26   While Plaintiffs appear to argue the Notices constitute an admission that "there was never a

[8] The second pages of these exhibits contain pictures and Plaintiffs' commentary and arguments about their Properties and this case.

United States District Court
Northern District of California

1   problem" with the second units on their Properties, the Notices do not say there was *never* a

2   problem with the Properties.  *See* Notices (stating the "nuisance abatement proceeding[s]" have

3   "been completed" and the "propert[ies] [are] *no longer* in violation" (emphasis added)).  The only

4   evidence in the record about why Defendants sent the Notices reflects they were issued to help

5   resolve the *Fratus I* litigation during settlement discussions with Plaintiffs.  *See* Crapo Decl.

6   ¶¶ 16-17, Dkt. No. 38.[9]  Even if Plaintiffs did not make changes to their Properties, they have no

7   objective evidence to support their interpretation of the Notices or to dispute Defendants' evidence

8   stating the reasons for issuing the Notices.  As there is no other evidence to support Plaintiffs'

9   interpretation of the Notices, they cannot use these Notices to establish a *genuine* dispute of fact

10  that Defendants' prior actions related to Plaintiffs' Properties were unreasonable or arbitrary.  In

11  any case, as discussed below, res judicata bars re-litigation of this issue.

12          Second, Plaintiffs offer evidence that on December 18, 2012, they went to the County's

13  Application and Permits Center and filled out a form known as "Planning Information Request."

14  Pls.' Suppl. Br. at 2.  According to Plaintiffs, Defendant Denison told them "he would not allow

15  them to submit an application because second units are not permitted in the F-1 zoning."  *Id.*  "Mr.

16  Denison would not accept the form and plaintiffs left the office unable to even file an application."

17  *Id.*; *see* K. Fratus Suppl. Decl. ¶ 7, Dkt. No. 85 ("Keith Denison told me that he would not allow

18  me to submit an application because second units are not permitted in the F-1 zoning.  Mr.

19  Denison stamped our application on the upper right corner with the date.  Mr. Denison would not

20  accept the form and I left the office unable to even file an application.").  This is competent

21  summary judgment evidence.  Moreover, while Denison has "little recollection" of this event, he

22  acknowledges there is a Planning Information Request containing handwritten information—none

23  written by him—which states the inquiry as "second units application" was "verbally denied per

24  Keith Dennison."  Denison Decl. ¶ 7, Dkt. No. 39; *see also id.*, Ex. A (Planning Information

25  _____

26  [9] Defendant Jason Crapo, the Building Official and Deputy Director of DCD, additionally asserts that one of DCD's clerical staff members, Cindy Stein, prepared the Notices but did not change

27  the standard language in the Notices to reflect the unusual circumstances for the releases in this case, and she may not have even been aware of the circumstances.  Crapo Decl. ¶ 17; *see also*

28  Stein Decl. ¶¶ 4-8, Dkt. No. 45 (declaring she made no changes to the form document and did not know whether Plaintiffs abated their violations).

United States District Court
Northern District of California

1    Request), Dkt. No. 39-1.  He explains the Planning Information Request form is not a permit

2    application but a preliminary request for information about whether a certain property could

3    qualify for a particular permit.  Denison Decl. ¶ 9.  He further states that had he reviewed

4    Plaintiffs' request form, he would have informed Mrs. Fratus that since second units are not

5    allowed in the F-1 zoning district, it would have been a waste of money for her to submit a permit

6    application for a second unit at either of her properties.  *Id.* ¶ 8.  However, he states he

7    "nonetheless would have accepted from her any permit application she desired to present to the

8    County[,]" but none was received to his knowledge.  *Id.*  The Court will consider Plaintiffs'

9    evidence that Denison "verbally denied" their Planning Information Request in December 2012.

10           Third, Plaintiffs allege that around May 8, 2012, they "applied for a mortgage loan to be

11   secured by their property at 2300 Dutch Slough" but their "lender informed them that because the

12   County listed the property as having only 972 square feet of living space, and the basement was

13   unfinished no loan would be available."  Pls.' Suppl. Br. at 3; K. Fratus Suppl. Decl. ¶ 10 ("In

14   June of 2013 the lender informed me that because the County listed the 2300 Property as having

15   only 972 square feet, no loan would be made available.").  They contend "[t]he 972 square foot

16   representation by the County would only be accurate if a portion of the Fratus' properties was not

17   legally usable."  *Id.*  Defendants object there is no evidence to confirm Plaintiffs' assertion aside

18   from Mrs. Fratus' Declaration, which is based on hearsay.  Defs.' Suppl. Br. at 8.  They also argue

19   "this incident does not concern any conduct by defendants; it relates solely to actions of third

20   parties (i.e., the mortgage lender)."  *Id.*  The Court agrees with Defendants that this evidence is

21   hearsay—in fact, it is double hearsay—as Plaintiffs attempt to use out-of-court statements to prove

22   the truth of the matter asserted in those statements.  *See* Fed. R. Evid. 801(c); 802 (hearsay

23   statements inadmissible unless subject to an exception).  Indeed, Plaintiffs are attempting to use

24   the lender's statement to Mrs. Fratus about what alleged statements the County made.  While

25   evidence at the summary judgment stage need not be admissible, Plaintiffs have provided no

26   indication they have or will be able to put forward non-hearsay evidence to support these

27   statements.  *Cf. Fraser*, 342 F.3d at 1037 (9th Cir. 2003) ("Because the [evidence] could be

28   presented in an admissible form at trial," court could consider the contents on summary

United States District Court
Northern District of California

11

judgment).  As such, the Court may not consider this evidence with Defendants' Motion.

Fourth, Plaintiffs allude to another event that took place "in June 2012 or later[,]" namely, a "failure to reverse the penalties[.]"  Pls.' Suppl. Br. at 3.  Later, Plaintiffs note "the First Amended Complaint alleges that after June 2012 Defendants failed to reverse 100% of the penalties that had been incurred on Plaintiff's property taxes as required by the Court (see paragraph 38)."  *Id.* at 5.  Plaintiffs attach to their Amended Opposition "Exhibit E" (without a declaration or other form of authentication), which they describe as "a cancelled check and letter from Bank of America" they claim "evidences payment of penalties that were generated by the illegal fines placed on the Subject Properties by the Defendants."  *Id.*; *see also* Am. Opp'n, Ex. E (Dkt. No. 75-6).  Exhibit E also contains an "Application for Tax Penalty Relief" submitted by Mrs. Fratus to the Contra Costa County Tax Collector, which states she seeks a refund for penalties she indicates are associated with the code enforcement action.  *See* Am. Opp'n, Ex. E. Defendants respond that Plaintiffs have "[n]o admissible evidence" that Defendants failed to reverse the penalties or that any of the Defendants were involved in the alleged refusal or failure to reverse the penalties.  Defs.' Suppl. Br. at 8.  Instead, Deputy Director Crapo states DCD "waived [] the fines" and "on February 2, 2012, through the DCD, issued a Notice of Correction to the Contra Costa County Auditor – Controller Tax Division reducing to $0 (zero) the amount of the administrative penalties and assessment for plaintiffs' properties."  Crapo Decl. ¶¶ 15, 18; *id.*, Ex. B (showing levies and assessments of $0 as the correct amount), Dkt. No. 38-1.  Again, the Court agrees the evidence put forward by Plaintiffs about the penalties is inadmissible hearsay evidence. Plaintiffs rely on Bank of America's out-of-court letter that it paid a delinquent county tax bill to prove that the County charged penalties associated with Plaintiffs' property.  There is no evidence to show the County actually charged those penalties.  Moreover, none of these documents show what these alleged penalties relate to; indeed, they may relate to entirely separate tax penalties rather than the ones associated with the code enforcement action.  There are additional problems with this evidence, but the foregoing issues alone preclude the Court from considering it.

Finally, Plaintiffs provide evidence they claim "show[s] that second units have been permitted by the county since 1951."  Pls.' Suppl. Br. at 3; K. Fratus Suppl. Decl., Ex. F, Dkt. No.

1    85-6 (DCD's "Summary of County Permit Records of Second Units and Second Residences in the

2    F-1 Zoning District" dated November 10, 2015).  While there are admissibility problems with this

3    evidence as well, as discussed below, it is immaterial to the Court's analysis of Plaintiffs' claims,

4    and thus there is no need for the Court to consider this evidence at this time.

5                                              **DISCUSSION**

6             The Court now turns to Defendants' arguments as to why summary judgment should be

7    granted in their favor.  As discussed below, the Court finds summary judgment appropriate on

8    Plaintiffs' substantive due process claim and equal protection claim on res judicata grounds, and

9    on Plaintiffs' First Amendment retaliation claim because Plaintiffs have failed to meet their

10   burden of establishing a genuine issue of material fact exists on this claim.[10]  To the extent the

11   Plaintiffs have any remaining state law claims, Court declines to exercise supplemental

12   jurisdiction over them, and dismisses this case in its entirety.

13   **A.      Res Judicata**

14            Defendants contend that all of Plaintiffs' claims are barred by res judicata in light of

15   *Fratus I.*  "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion,

16   which are collectively referred to as 'res judicata.'"  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)

17   (footnote omitted).  "Claim preclusion, often referred to as res judicata, bars any subsequent suit

18   on claims that were raised *or could have been raised in a prior action*."  *Cell Therapeutics, Inc. v.

19   Lash Grp., Inc.*, 586 F.3d 1204, 1212 (9th Cir. 2009) (emphasis added), *as amended on denial of

20   reh'g and reh'g en banc* (Jan. 6, 2010); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708,

21   713-4 (9th Cir. 2001) (same).  "Issue preclusion, in contrast, bars 'successive litigation of an issue

22   of fact or law actually litigated and resolved in a valid court determination essential to the prior

23   judgment,' even if the issue recurs in the context of a different claim."  *Taylor*, 553 U.S. at 892

24   (quotation omitted).  "By 'preclud[ing] parties from contesting matters that they have had a full

25   and fair opportunity to litigate,' these two doctrines protect against 'the expense and vexation

26   attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action

27

28   [10] Subject matter jurisdiction in this case is premised on Plaintiffs' federal question claims.  The
     parties are not diverse.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    by minimizing the possibility of inconsistent decisions.'" *Id.* (quoting *Montana v. United States*,

2    440 U.S. 147, 153-54 (1979)).

3      For res judicata to apply there must be: (1) an identity of claims; (2) a final judgment on

4    the merits; and (3) identity or privity between parties. *Harris v. Cty. of Orange*, 682 F.3d 1126,

5    1132 (9th Cir. 2012); *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139,

6    1150 (9th Cir. 2011). The party asserting a preclusion argument "must carry the burden of

7    establishing all necessary elements." *Taylor*, 553 U.S. at 907 (quotation omitted).

8      There is no dispute that there is an identity or privity of the parties between *Fratus I* and

9    this action. Nor is there any real dispute that *Fratus I* resulted in a final decision on the merits of

10    Plaintiffs' procedural and substantive due process claims in that case. *See Harris*, 682 F.3d at

11    1132 (summary judgment qualifies as final decision on the merits). Thus while Plaintiffs

12    voluntarily dismissed their state law claims in *Fratus I*, there is no dispute that action in general

13    resulted in a final adjudication.

14      The primary dispute between the parties is whether there is an "identity of claims" between

15    *Fratus I* and this action. To determine if there is an "identity of claims," courts look to four

16    factors, "which we do not apply mechanistically": (1) whether the two suits arise out of the same

17    transactional nucleus of facts; (2) whether rights or interests established in the prior judgment

18    would be destroyed or impaired by prosecution of the second action; (3) whether the two suits

19    involve infringement of the same right; and (4) whether substantially the same evidence is

20    presented in the two actions. *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir.

21    2005). Though all four factors are considered, "[r]eliance on the transactional nucleus element is

22    especially appropriate because the element is 'outcome determinative.'" *ProShipLine Inc. v.

23    Aspen Infrastructures LTD*, 609 F.3d 960, 968 (9th Cir. 2010) (quoting *Mpoyo*, 430 F.3d at 988).

24    "Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata

25    finding if the claims could have been brought in the earlier action." *Tahoe-Sierra Pres. Council,

26    Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003).

27      In virtually all respects, Plaintiffs' claims in this action arise out of "the same alleged

28    wrongs [they] unsuccessfully protested before." *Id.* at 1078. As Defendants point out, the two

United States District Court
Northern District of California

1    lawsuits "concern the same plaintiffs, same defendants, same properties, same building code and

2    zoning violations, same enforcement actions, same administrative fines and same damage claims."

3    Mot. at 13-14.  This point is reflected by the fact that this Court can and does almost entirely adopt

4    Judge Corley's statement of facts from the Summary Judgment Order in *Fratus I* to describe the

5    events giving rise to the claims Plaintiffs assert in this action.  Indeed, the Court's review of the

6    evidence submitted in these cases shows that substantially the same evidence has been presented

7    in both actions.

8            This finding also applies to Mr. Denison's December 2012 determination regarding

9    Plaintiffs' Request for Information.  The only evidence before the Court regarding Denison's

10   determination demonstrates he came to the same conclusion about the zoning laws as other

11   Defendants did on prior occasions relating to Plaintiffs' Properties.  *See* Bhat Decl. ¶¶ 7-8, Dkt.

12   No. 36; Denison Dep. 72:1-19, Dkt. No. 86-4; Denison Decl. ¶¶ 8-9; *see also Fratus I* Bhat Decl.

13   ¶¶ 7-8, Dkt. No. 71 (describing the same F-1 zoning analysis as in this case).  Plaintiffs'

14   Opposition concedes their current challenge to Defendants' F-1 zoning interpretation has "always

15   been the argument of the Plaintiffs" and it is "now being repeated as Bhat did in 2012 hearing

16   before Judge Corley."  Am. Opp'n at 13.  Thus there is no dispute Judge Corley had Defendants'

17   F-1 zoning interpretation before her in considering whether Defendants' determinations violated

18   Plaintiffs' substantive due process rights.  Plaintiffs' claims about Denison's same interpretation

19   of the zoning requirements merely asserts "the same alleged wrongs [they] unsuccessfully

20   protested before" or "could have" protested before in *Fratus I.  Tahoe-Sierra*, 322 F.3d at 1078.

21           Specifically, in *Fratus I*, Judge Corley found—and the Ninth Circuit affirmed—that even

22   if Plaintiffs are correct that Defendants erroneously determined the Properties are illegal, the fact

23   that DCD may have "misinterpreted an ordinance does not mean Defendants violated substantive

24   due process."  *Fratus I* Order re: Mot. for Summ. J. at 12.  Applying rational basis review, Judge

25   Corley found Defendants' interpretation of the zoning requirements "not wholly unreasonable"

26   and "at least 'fairly debatable.'"  *Id.*  The Ninth Circuit's opinion affirmed this ruling.  *Fratus*, 599

27   F. App'x at 708-09.  Accordingly, to the extent Plaintiffs now ask this Court to find Defendants

28   are arbitrary or irrational in interpreting the zoning requirements already considered by Judge

United States District Court
Northern District of California

1    Corley and the Ninth Circuit's Orders, such adjudication is barred by res judicata.  Plaintiffs

2    already had their opportunity to prove that Defendants' interpretations were irrational, malicious,

3    or arbitrary but failed to do so.  *See Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1990)

4    ("[T]he rational relation test will not sustain conduct by state officials that is malicious, irrational

5    or plainly arbitrary." (citation omitted))

6         This finding has the following implications.  First, Plaintiffs' substantive due process

7    claim, which closely mirrors the claim made in *Fratus I*, is barred.  Plaintiffs vaguely argue their

8    substantive due process claim in this action "clearly arises from the fact that Defendants continued

9    to take actions even after the State court granted a writ of mandate."  Am. Opp'n at 19.  But

10   Plaintiffs do not explicitly explain which "actions" they are referring to or why those actions in

11   light of the state court's limited findings violate their substantive due process rights.[11]  In any case,

12   as Judge Corley has already noted, "the issue of whether Defendants properly applied County

13   ordinances is not determinative of whether Defendants violated substantive due process."  *Fratus I*

14   Order Denying Relief from Final Judgment at 7.  All the other arguments and evidence on which

15   Plaintiffs now rely for their substantive due process claim were considered or could have been

16   considered in *Fratus I*.  *See Tahoe-Sierra*, 322 F.3d at 1078 ("Res judicata bars relitigation of all

17   grounds of recovery that were asserted, or could have been asserted, in a previous action between

18   the parties, where the previous action was resolved on the merits. It is immaterial whether the

19   claims asserted subsequent to the judgment were actually pursued in the action that led to the

20   judgment; rather, the relevant inquiry is whether they could have been brought.").

21        Second, Plaintiffs' equal protection claim is also barred.  Plaintiffs allege that "Defendants,

22   acting in concert, singled out plaintiffs by refusing to issue permits for second units on their

23   properties.  Such permits are routinely issued to others in Plaintiff's position; in fact, State law

24   

25   [11] Plaintiffs assert "[a] judgment has no res judicata effect on subsequent actions or facts,
     especially where there has been a change in circumstances as dramatic as a state court mandamus
26   ruling confirming the legality of plaintiffs' use of their property."  Am. Opp'n at 18.  It is unclear
     what Plaintiffs mean by this assertion.  The state court did not finally determine the legality of
27   Plaintiffs' use of their property; rather, it concluded that, based on the administrative record before
     it, DCD's findings were not supported by the evidence.  That is not a positive affirmation that
28   Plaintiffs' use of the property was compliant.

demands that such permits be issued."  Am. Opp'n at 18-19; Am. Compl. ¶ 58.  An equal

protection claim may be established by showing that similarly situated individuals were

intentionally treated differently without a rational relationship to a legitimate state purpose.

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *N. Pacifica LLC v. City of Pacifica*,

526 F.3d 478, 486 (9th Cir. 2008) ("plaintiff must establish that the City intentionally, and without

rational basis, treated the plaintiff differently from others similarly situated" (citations omitted)).

The Ninth Circuit has held that the government's action "must  be  upheld" if "the rational relation

of the zoning actions to legitimate governmental interests is at least fairly debatable . . ."  *Nelson v.

City of Selma*, 881 F.2d 836, 839 (9th Cir. 1989).  Judge Corley previously found Defendants'

interpretation of the zoning requirements in relation to Plaintiffs' Properties "at least 'fairly

debatable,'" establishing a rational basis for their actions, even if ultimately incorrect.[12]  *See*

*Seariver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002) (municipality's

actions comport with equal protection if there is "any reasonably conceivable state of facts that

could provide a rational basis for the classification." (quoting *FCC v. Beach Commc'ns, Inc.*, 508

U.S. 307, 313 (1993)).  Thus, Plaintiffs' equal protection claim is barred by res judicata.

Plaintiffs' First Amendment retaliation claim, however, is not precluded by res judicata as

it is based on acts that occurred after Plaintiffs filed *Fratus I*, largely based on allegations

Defendants retaliated against Plaintiffs because of the *Fratus I* lawsuit.  *See* Am. Compl. ¶ 64

(alleging Defendants retaliated against Plaintiffs due to their "exercise of their constitutionally

protected right to speak out against the defendants and to bring legal action against the defendants

for violation of their rights" and "[t]he denial of the permits was part of defendants' orchestrated

plan to carry out a campaign of official harassment and retaliation against the plaintiffs"); Am.

Opp'n at 19 ("The complaint clearly alleges that [Defendants refused to issue permits for second

---

[12] While Plaintiffs presented evidence that other lots in the area had second units, arguing this is
evidence of unequal treatment, it seems likely this evidence was available to them during *Fratus I*
and could adjudicated in that case.  *See, e.g.*, Opp'n, Ex. B, Dkt. No. 62-2 (letter dated May 6,
2010 from someone who Plaintiffs appear to allege is a neighbor indicating the neighbor's
property contained "two legal living units"); *see also Tahoe-Sierra*, 322 F.3d at 1078 ("Any of the
claims presently before us could [] have been asserted in the previous lawsuit.").

1   units on Plaintiffs' Properties] after December 18, 2012 (First Amended Complaint, paragraph 41)

2   which was long after the original lawsuit.").  Plaintiffs provide no indication they base their

3   retaliation claim on any conduct prior to December 2012.  Defendants acknowledge that claims

4   arising from the December 2012 incident with Defendant Dennison could not have been included

5   in *Fratus I*.  Mot. at 15; *United States v. Wanland*, No. 14-10170, __ F.3d__, 2016 WL 4011175,

6   at *8 (9th Cir. July 27, 2016) (Ninth Circuit case law generally holds "that res judicata only

7   applies where a claim could have been asserted in a previous action"); *Liquidators*, 630 F.3d at

8   1151 (generally no res judicata where a party "could not have" brought the asserted claim).  As

9   such, res judicata does not bar this claim.

10          Finally, as to Plaintiffs' state law claims, to the extent they could have been brought in

11   *Fratus I*—in other words, to the extent such claims arose out of events that Judge Corley could

12   have considered in relation to the *Fratus I* case—those claims are also barred.  *See Owens*, 244

13   F.3d at 714 (finding claims that could have been asserted in prior action, "whether they were or

14   not[,]" barred by res judicata (quotation omitted)); *Stewart*, 297 F.3d at 959 (res judicata applied

15   where plaintiffs could have but failed to include claim they later attempted to assert, noting "[t]he

16   predicament in which respondent finds himself is of his own making . . . . [W]e cannot be

17   expected, for his sole relief, to upset the general and well-established doctrine of res judicata,

18   conceived in the light of the maxim that the interest of the state requires that there be an end to

19   litigation—a maxim which comports with common sense as well as public policy.  And the

20   mischief which would follow the establishment of precedent for so disregarding this salutary

21   doctrine against prolonging strife would be greater than the benefit which would result from

22   relieving some case of individual hardship." (quotation omitted)).  It makes no difference that

23   Plaintiffs voluntarily dismissed their state law claims in *Fratus I*.  *See, e.g.*, *Wilkinson v. Pitkin

24   Cty. Bd. of Cty. Comm'rs*, 142 F.3d 1319, 1322-23 (10th Cir. 1998) (per curiam) (rejecting

25   argument that because plaintiffs voluntarily dismissed their federal claims in their first case, there

26   was no an adjudication of the merits of the claims; "Plaintiffs . . . could or did have these claims

27   decided in the [second case]. Therefore, res judicata bars this federal action."); *Sims v. City of

28   Detroit*, 1 F.3d 1242 (6th Cir. 1993) (unpublished) (affirming dismissal of federal claim that

1  plaintiff had previously voluntarily dismissed without prejudice); *see also Remy Enter. Grp., LLC*

2  *v. Davis*, 37 F. Supp. 3d 30, 39 (D.D.C. 2014) ("[W]hen, as in this suit, claims represent a

3  convenient trial unit, arise out of the same incident, and occur prior to judgment in a previous case,

4  those claims are precluded from being raised in future suits.").[13]  Thus the Court grants summary

5  judgment to Defendants to the extent Plaintiffs' state law claims are based on claims that might

6  have been raised in *Fratus I*.  To the extent Plaintiffs raise claims that could not have been

7  adjudicated in *Fratus I*, the Court need not address them as it declines to exercise jurisdiction over

8  Plaintiffs' state law claims, as discussed below.

9    In sum, Plaintiffs' substantive due process and equal protection claims are barred based on

10  res judicata as they were resolved or could have been resolved in *Fratus I*.  The same is true for

11  Plaintiffs' state law claims to the extent they could have been brought and adjudicated in *Fratus I*.

12  **B.**  **First Amendment Retaliation**

13    The Court now turns to Defendants' arguments concerning Plaintiffs' remaining First

14  Amendment retaliation claim under 42 U.S.C. § 1983.  "Official reprisal for protected speech

15  'offends the Constitution [because] it threatens to inhibit exercise of the protected right[';] . . . the

16  First Amendment prohibits government officials from subjecting an individual to retaliatory

17  actions . . . for speaking out."  *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (first alteration in

18  original) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998)) (additional citation

19  omitted).  To prevail under § 1983 for such retaliation, "a plaintiff must prove: (1) he engaged in

20  constitutionally protected activity; (2) as a result, he was subjected to adverse action by the

21  defendant that would chill a person of ordinary firmness from continuing to engage in the

22  protected activity; and (3) there was a substantial causal relationship between the constitutionally

23  protected activity and the adverse action."  *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir.

24  2010) (footnote omitted) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir.

25  2006)).  A plaintiff must ultimately "'prove the elements of retaliatory animus as the cause of

26  injury,' with causation being 'understood to be but-for causation.'"  *Lacey v. Maricopa Cty.*, 693

27

28  _____

[13] The Court considers these cases as persuasive authority, because while they rely on state law, they utilize the same res judicata test employed in the Ninth Circuit.

19

United States District Court
Northern District of California

F.3d 896, 917 (9th Cir. 2012) (quoting *Hartman*, 547 U.S. at 260); *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900-01 (9th Cir. 2008) ("Plaintiff must ultimately prove first that Defendants took action that would chill or silence a person of ordinary firmness from future First Amendment activities . . . . The second requirement is that . . . Plaintiff must ultimately prove that Defendants' desire to cause the chilling effect was a but-for cause of Defendants' action." (quotation and edits omitted)).

Plaintiffs make little attempt to oppose Defendants' Motion for Summary Judgment on their retaliation claim. While they contend "[t]he Disputed Facts clearly show Defendants retaliated against Plaintiffs and continue to retaliate against Plaintiffs for excising Fratus' First Amendment Rights which has caused a chilling effect on the Plaintiff's rights to attend and speak out against the Defendants" (Am. Opp'n at 6), they provide no facts on which a jury could find for them at trial. There is no evidence tying Plaintiffs' protected speech to Denison's decision on the Request for Information in December 2012 or any other action by Defendants.[14] In other words, Plaintiffs have identified no evidence that any of Defendants' allegedly unlawful acts were taken because Plaintiffs engaged in protected speech, such as by showing that Denison even knew about the lawsuit in *Fratus I*. Nor is there any evidence that any of Defendants' acts would chill a person of ordinary firmness from speaking out. Plaintiffs have presented no evidence on which a jury could find in their favor on this claim. Consequently, the Court shall grant Defendants summary judgment on this claim.

## C.      Supplemental State Law Claims

The Court's exercise of jurisdiction over Plaintiffs' state law claims is only supplemental. *See Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) (supplemental jurisdiction over state claims "exists when a federal claim is sufficiently substantial to confer federal jurisdiction, and there is 'a common nucleus of operative fact between the state and federal claims.'" (quotation omitted); *see also* 28 U.S.C. § 1367(c). A court may decline to exercise supplemental jurisdiction over a state

---

[14] To the extent Plaintiff alleges retaliation based on acts related to the *Fratus I* lawsuit, such as Defendants' responses to Plaintiffs' speech in relation to the code enforcement action, there is no evidence to support such a claim.

United States District Court
Northern District of California

law claim if all claims over which it has original jurisdiction have been dismissed.  28 U.S.C. § 1367(c)(3); *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997) (exercise of supplemental jurisdiction discretionary); *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 726 (1966) (same).  When all federal claims are eliminated before trial, the balance of convenience, fairness, and comity generally "will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir.), *supplemented on other ground*, 121 F.3d 714 (9th Cir. 1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

As all Plaintiffs' federal claims have been dismissed, the Court now declines to exercise supplemental jurisdiction over their state-law claims.  *See Winter v. I.C. Sys. Inc.*, 543 F. Supp. 2d 1210, 1214 (S.D. Cal. 2008) (declining to exercise supplemental jurisdiction over a plaintiff's state law claims for declaratory relief, injunctive relief, among other claims); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 674 (1950) (the federal Declaratory Judgment Act, 28 U.S.C. § 2201, does not on its own provide basis for federal jurisdiction); *Countrywide Home Loans, Inc., v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011) (jurisdiction "must properly exist independent of the [federal Declaratory Judgment Act]").

### CONCLUSION

Based on the analysis above, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment on Plaintiffs' substantive due process claim, equal protection claim, and First Amendment retaliation claim but **DENIES** summary judgment on Plaintiffs' state law claims for declaratory and injunctive relief and inverse condemnation to the extent they are not barred by res judicata.  As Plaintiffs' federal claims have been dismissed, the Court **DECLINES** to exercise supplemental jurisdiction over any remaining state law claims, and dismisses the action in its entirety.  The Clerk of the Court shall close the file in this matter.

**IT IS SO ORDERED.**

Dated: September 29, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge

21